NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0232n.06

No. 08-4421

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Apr 14, 2010**
LEONARD GREEN, Clerk

MARVIN L. WILLIAMS,

      Plaintiff - Appellant,

v.

JUSTIN INGHAM, ET AL.,

      Defendants - Appellees.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

_____/

Before: MARTIN, SUHRHEINRICH, and WHITE, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge. Marvin Williams appeals the district court's entry of summary judgment for the officers on his claims of excessive force, pursuant to 18 U.S.C. § 1983, in violation of his rights under the Fourth Amendment arising out of two arrests. However, he has failed to allege a constitutional violation based on the officers' actions during his two arrests. We therefore **AFFIRM** the district court's entry of summary judgment for the defendants.

**I.**

**A.     Factual Background**

Williams' claims of excessive force arise from two arrests, the first on September 1, 2005 and the second on November 27, 2005.

**1.     September 1, 2005 Arrest (The First Arrest)**

On September 1, 2005, Officers Jason Ingham, Joseph Bodnar, and Christopher Hutchinson were on shift with the Akron Police Department. As per department procedure, at roll call at the

beginning of their shift, the officers had received a "hot sheet" of vehicles reported stolen that day.

At approximately 12:40 a.m., Officers Ingham and Bodnar noticed a 1995 Plymouth Acclaim that had been listed as stolen. They radioed for back up and followed the Acclaim. After witnessing the Acclaim speed up and run a stop sign, Officers Ingham and Bodnar attempted to initiate a felony stop with active lights and siren. Williams, who was driving the Acclaim, did not stop; instead, he drove off at a high speed through a residential neighborhood with police in pursuit. During the chase, Officer Hutchinson responded to the request for back up and joined the pursuit with active lights and siren. Police allege that the high-speed chase reached speeds of up to 70 mph in a 25 mph zone, but Williams admits to reaching speeds of up to 50 mph only. During the chase, Williams ran 18 stop signs and nearly hit a police cruiser.

The chase ended when the Acclaim stopped at 792 Hayden Ave., Akron, Ohio. The three officers exited their vehicles to seize Williams before he drove away. Officer Hutchinson recognized the driver as Williams, a person whom he knew from previous experience as having a tendency to flee from the police. Officer Ingham approached the passenger side of the Acclaim, while Officers Hutchinson and Bodnar, with his duty weapon drawn, approached the driver side. Officer Hutchinson observed Williams moving inside the Acclaim with his hands not in view of the window. He believed that Williams might have been reaching for a gun or attempting to hide drugs. At some point, Williams placed his hands outside the open window. Officers Bodnar and Hutchinson gave Williams several verbal commands to exit the Acclaim. When Williams did not comply, Officer Bodnar holstered his weapon and assisted Officer Hutchinson in opening the driver side door, seizing Williams by the arm, removing him from the vehicle, and taking him to the ground. Williams was

handcuffed and no additional force was used. Officer Ingham had no physical contact with Williams during the arrest; his involvement was limited to breaking the passenger side windows of the Acclaim to look for passengers or weapons.

Williams sustained a two-centimeter cut above his left eye as a result of being removed from the car and taken to the ground. As a result, Sergeant Dale Dorn was called to the scene to fill out a Supervisor's Resisting Arrest/Use of Force Checklist and to interview Williams. During the taped interview, Williams admitted to having driven the car, to knowing that the officers were behind him, to smoking marijuana that day, to running from the police, and to not possessing a valid driver's license. Sergeant Dorn determined that the use of force was reasonable and in compliance with department rules, regulations, and procedures.

Williams was indicted by a Summit County Grand Jury on five counts: (1) receiving stolen property, (2) failure to comply with the order or signal of a police officer, (3) no operator's license, (4) failure to stop at a stop sign, and (5) failure to stop at a red light.

### 2.      November 27, 2005 Arrest (The Second Arrest)

On November 27, 2005, while Williams was out on bond from the indictment following the first arrest, Officers Hutchinson, Timothy Van Nostran, and Patrick Didyk were working patrol. At approximately 11:30 p.m., Officers Van Nostran and Didyk observed Williams leaving a known drug house at 718 Copley Road, Akron, Ohio. When Williams saw the officers, he fled in an Oldsmobile Delta with a female passenger in the front seat. He led the officers on a high-speed car chase through residential neighborhoods, reaching speeds up to 70 mph. Williams ran several stop signs and red lights. The chase ended at the corner of Vernon Odom Boulevard and Frederick Boulevard, where

Williams claims that he stopped and the officers claim that the Oldsmobile struck Officer Didyk's and Van Nostran's cruiser.

When the Oldsmobile came to a stop, all three officers exited their respective cruisers. Officers Hutchinson and Van Nostran approached the driver's side, and Officer Didyk approached the passenger side and placed the female passenger, Tracy Johnson, in handcuffs without incident. Officer Hutchinson and Officer Van Nostran, with his duty weapon drawn, gave Williams several commands to show his hands and exit the vehicle. Williams did not comply with these commands; instead, he had his hands on the steering wheel as the officers approached. Officer Hutchinson attempted to pull Williams from the vehicle and Officer Van Nostran holstered his weapon to assist. Williams moved toward the center of the vehicle and reached for the console. Officer Hutchinson broke his own finger attempting to remove Williams from the car and pulled away from the vehicle.

Officer Van Nostran used his asp to jab Williams' upper torso once and, when this was unsuccessful, expanded his asp to use as a baton and struck Williams' mid-thigh region twice. Officer Van Nostran then grabbed Williams' arms, pulled him out of the Oldsmobile, and took him to the ground. Williams struggled to keep his hands concealed underneath his body. Officer Van Nostran placed his baton between Williams' left upper arm and torso and rotated it in a circular motion in an attempt to remove Williams' arm from underneath him.

Officer Didyk attempted to gain control of Williams' hands with two closed-fist strikes to Williams' middle back with his hand. After this proved unsuccessful, Officer Didyk delivered a five-second drive stun to Williams' lower back using his M-26 taser, meaning that the probe cartridge was removed from the taser and the taser was then placed directly against Williams' body.

At this time, the officers were able to place Williams' hands in handcuffs, and no additional force was used. Williams was briefly searched for weapons and contraband on the scene, but an in-depth search could not be performed because he had blood on his chest and arms. A search of the Oldsmobile uncovered crumbs of crack cocaine near the driver side floorboard and a marijuana cigar near the passenger floorboard.

Sergeant Jesse Lesser interviewed Williams, filled out the relevant checklist, and determined that all department rules, regulations, and procedures were followed in the second arrest.

Williams was taken to the Akron General Medical Center, where he complained of pain in his face and back. While at the hospital, Williams was released from his handcuffs twice to transfer hospital beds. X-rays showed that he suffered a nasal fracture and a strained lower back; he was treated with Tylenol and discharged. Officers Van Nostran and Didyk escorted Williams out of the hospital and Officer Didyk witnessed Williams dropping a baggie from his right hand that contained 1.1 grams of crack cocaine.

Williams was indicted by a Summit County grand jury in a supplemental indictment on eight additional counts: (1) failure to comply with an order or signal of a police officer; (2) possession of cocaine in the amount of one to five grams (later amended to an amount less than one gram); (3) illegal use or possession of drug paraphernalia; (4) possession of marijuana; (5) driving under suspension; (6) resisting arrest; (7) obstructing official business; and (8) reckless operation.

A jury trial was held. The charges of driving under suspension and receiving stolen property were dismissed by the trial judge pursuant to Williams' Rule 29 motion, and no sentence was imposed on the minor misdemeanor counts of failure to stop at a stop sign, failure to stop at a red

light, possession of marijuana, and reckless operation. Williams was found guilty by the jury on all seven remaining charges, including the charge of resisting arrest in violation of O.R.C. § 2921.31(A). He was sentenced to an aggregate of nine years and nine months in prison. Williams unsuccessfully appealed his convictions to the Ninth District Court of Appeals of Ohio. *State v. Williams*, No. 23176, 2007 WL 466071 (Ohio Ct. App. Feb. 14, 2007).

**B.     Procedural Background**

On August 21, 2007, Williams filed a pro se complaint against Officers Ingham, Bodnar, Hutchinson, Didyk, and Van Nostran, alleging that the officers violated his Fourth, Eighth, and Fourteenth Amendment rights by using excessive force while arresting him on September 1, 2005 and November 27, 2005. He sought $100 million in compensation for his injuries, a vacated sentence, and attorney's fees.

On June 30, 2008, the officers moved for summary judgment, arguing that they are entitled to qualified immunity under 42 U.S.C. § 1983, that they did not violate Williams' Fourth Amendment rights during either arrest, and that Williams' excessive force claim arising from his November 27, 2005, arrest is barred under *Heck*.

On September 16, 2008, the district court granted the officers' motion, finding that Williams' claims arose under the Fourth Amendment and that his Fourth Amendment rights were not violated during the first or second arrests. The court found that the officers' actions and use of force during both arrests were objectively reasonably in light of the circumstances and did not constitute excessive force under the Fourth Amendment. The court also found that Williams' claim of excessive force related to the second arrest is barred by *Heck* because a conviction for resisting arrest

requires a finding that the arrest was lawful, which in turn requires that the arresting officers did not use excessive force. The court went on to find, sua sponte, that under *Preiser v. Rodreiguez*, 411 U.S. 475 (1973), neither relief from conviction for resisting arrest nor a release from prison is available via a section 1983 claim. Williams timely appealed.

## II.

"The Sixth Circuit reviews de novo a district court's grant of summary judgment." *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 627 (6th Cir. 2008) (citing *Hardesty v. Hamburg Twp.*, 461 F.3d 646, 650 (6th Cir. 2006). "Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id*. (citing Fed. R. Civ. P. 56(c)). "The moving party has the initial burden of proving that no genuine issue of material fact exists," *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989)), and the court must view all reasonable inferences in the light most favorable to the nonmoving party. *Id*. (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Street*, 886 F.2d at 1479-80. The non-moving party must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor. *Street*, 886 F.2d at 1476, 1477. "The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id*. at 1480-81.

**III.**

Williams argues that the district court erred in finding that the officers had not violated his Fourth Amendment rights[1] in both arrests and that a genuine issue of material fact exists as to whether he was resisting at the time of the first arrest because he alleges that the officers made inconsistent statements.[2] Additionally, he argues that his claim arising from the second arrest is not barred under *Heck v. Humphrey*, 512 U.S. 477 (1994).

Government officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights. *Hills v. Kentucky*, 457 F.3d 583, 587 (6th Cir. 2006). Stated differently, a "defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009) (citing *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)).

---

[1] Williams alleges violations of his Fourth, Eighth, and Fourteenth Amendment rights. As the district court found, because his claims arise from the officers' actions contemporaneous with Williams' arrest, the officers' actions are analyzed under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989).

[2] Williams' best argument, based on the facts as he alleges them, is that the officers' prior inconsistent statements as to whether he was resisting arrest, which he terms perjury, create a genuine issue of material fact precluding summary judgment.

Until recently, courts used the two-step sequential inquiry set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), to address an assertion of the qualified immunity defense.[3] Under *Katz*, a court first asked whether, viewed in the light most favorable to plaintiff, the facts show that the officer's conduct violated a constitutional right. *Id.* at 201. If the answer to this first question was "no," the analysis proceeded no further because the plaintiff failed to establish a *prima facie* case of violation of a constitutional right and the officer need not even seek the protection of qualified immunity. *Id.*; *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008).

If, however, the facts established a violation of the plaintiff's constitutional rights, *Katz* mandated that the next step was to determine whether the constitutional right was "clearly established" at the time of the violation. If not, the officer would be entitled to qualified immunity. *Katz*, 533 U.S. at 201. Under the "clearly established" inquiry, the question is whether the right was "so 'clearly established' that a reasonable official would understand that what he is doing violates that right." *Parsons*, 533 F.3d at 500 (quoting *Charvat v. E. Ohio Reg'l Wastewater Auth*., 246 F.3d 607, 616 (6th Cir. 2001)). "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Katz*, 533 U.S. at 201. Previously, this Court has included a third inquiry to "increase the clarity" of the *Katz* analysis: "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in

---

[3] In *Pearson v. Callahan*, __ U.S __, 129 S. Ct. 808 (2009), the Supreme Court recently abandoned *Katz*'s requirement that courts must address the qualified immunity inquiries sequentially, *id.* at 813, but because *Pearson* left in place *Katz*'s core analysis, all pre-*Pearson* case law remains good law. *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009).

light of the clearly established constitutional rights." *Floyd v. City of Detroit*, 518 F.3d 398, 405 (6th Cir. 2008) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n.2 (6th Cir. 2005)).

Under *Graham*, the actions of the officers must be judged from the perspective of a reasonable officer on the scene and must take into consideration "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396 (citations omitted).

In a factually similar case, we affirmed a district court's grant of summary judgment in favor of the police officers where the plaintiff's leg was broken as a result of being forcibly removed from his car by arresting officers following a two-minute car chase. *Dunn v. Matatall*, 549 F.3d 349, 354 (6th Cir. 2008). We found that, based on the heightened suspicion and danger resulting from the car chase, the plaintiff's refusal to exit the car and the fact that an officer could not know what dangers might be in the vehicle, the officers' actions of removing Dunn from the car to contain these potential threats were objectively reasonable, even though the plaintiff suffered serious injury as a result of being removed from the car. *Id.*

## A. First Arrest

With regard to his first arrest, Williams admitted to having run several stop signs and having reached very high speeds in a *residential* zone while fleeing from the police. Officers Ingham, Hutchinson, and Bodnar—his weapon drawn—approached the car. Officer Hutchinson saw Williams moving around with his hands below the window and believed that Williams may have been reaching for a weapon or hiding drugs. Although Williams did show his hands at some point,

he nevertheless ignored Officers Bodnar's and Hutchinson's verbal directives to exit the car. Officer Bodnar holstered his weapon and assisted Officer Hutchinson in opening the driver side door, taking Williams by the arm, removing him from the vehicle, and taking him to the ground. Williams was then handcuffed and no additional force was used. Williams sustained a two-centimeter cut above his eye as a result of being taken to the ground.

As the district court correctly found, in light of the circumstances, the officers used minimal force to quickly bring Williams under control and to neutralize a potential safety threat to the officers. As in *Dunn*, this objectively reasonable use of force was therefore not in violation of the Fourth Amendment. As Williams has failed to show that his constitutional rights were violated, we need not proceed to the second *Katz* prong. The district court therefore did not err in granting judgment in favor of the officers for their actions in the first arrest.

**B.     Second Arrest**

With regard to his second arrest, after leaving a known crack house, Williams again led the officers on a high-speed chase through a residential area. After he stopped his car and the officers approached, giving Williams verbal commands to show his hands and exit the vehicle, he ignored them, making it impossible for the officers to ascertain whether he had a weapon. Williams again moved toward the center of the front seat and reached toward the console. Officer Hutchinson broke his finger while attempting to extract the struggling Williams from the vehicle. When Officer Van Nostran saw that Officer Hutchinson was injured, he used a takedown technique to remove Williams from the vehicle and put him face-down on the ground. Williams continued to struggle to hold his hands under his body and would not show them to the officers, who still did not know whether

Williams had a weapon. Officer Didyk delivered two closed-fist blows to Williams' middle back. Only when this failed to subdue Williams did Officer Didyk use his taser.

Under the circumstances, the officers' use of force was brief and was used only to bring a non-compliant Williams under control. As with Williams' first arrest, the district court correctly found that the officers' actions amounted to an objectively reasonable use of force that did not violate the Fourth Amendment. As Williams has failed to show that his constitutional rights were violated, the district court did not err in granting judgment in favor of the officers for their actions in the second arrest.[4]

## VI.

For the foregoing reasons, we **AFFIRM** the district court's judgment.

---

[4] Williams also appeals the district court's finding that his section 1983 claim based on his second arrest is barred by *Heck*. However, as Williams failed to show that his constitutional rights were violated during his second arrest, we need not determine whether his claim was barred by *Heck*.