**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0115n.06

**No. 15-6142**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ESTATE OF LEON BRACKENS, | ) | |
| | ) | **FILED** |
| Plaintiff, | ) | Feb 21, 2017 |
| | ) | DEBORAH S. HUNT, Clerk |
| ODELL BRACKENS, JR., as Personal | ) | |
| Representative of the Estate of Leon Brackens, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LOUISVILLE JEFFERSON COUNTY METRO | ) | |
| GOVERNMENT, dba Louisville Metro Police | ) | ON APPEAL FROM THE |
| Department; SAM MADISON; KEVIN HAMLIN; | ) | UNITED STATES DISTRICT |
| BRIAN GILLOCK; NATHANIEL HERNANDEZ; | ) | COURT FOR THE WESTERN |
| JAMES STEFFAN; ROBERT ASHENFELTER; | ) | DISTRICT OF KENTUCKY |
| ROBERT WARD; MATTHEW GLASS; | ) | |
| CHRISTOPHER MEREDITH; STU HAMILTON, | ) | |
| Sergeant, in their individual capacities, | ) | |
| | ) | |
| Defendants-Appellants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| EMILY LETTIE, et al., | ) | |
| Defendants. | ) | |

BEFORE:   GUY, BOGGS, and MOORE, Circuit Judges.

BOGGS, Circuit Judge.   Leon Brackens brought a § 1983 claim against the Louisville/Jefferson County Metro Government, Louisville Metro Police Department (LMPD) officers, and Jeffersonville (Indiana) Police Department (JPD) officers seeking damages for

injuries that Brackens sustained as a result of his forcible removal from the passenger side of a minivan following a car chase. He also brought a "conspiracy to interfere with civil rights" claim and state-law evidence-tampering and tort claims. The district court granted summary judgment to the defendants on qualified-immunity grounds. The only defendants remaining on appeal are the LMPD police officers in their individual capacity. Because the officers' forcible removal of Brackens from the vehicle was objectively reasonable in light of the facts and circumstances confronting them on the scene, we affirm the district court's grant of summary judgment.

I

A late-night traffic stop in Jeffersonville, Indiana spiraled into a twenty-minute, cross-state car chase that ended in Leon Brackens sustaining femoral and humeral fractures after being forcibly removed from the vehicle. Brackens, a middle-aged black man who suffered from sickle-cell anemia, severe osteopenia, and hypertension, needed a ride to the store. Rhonda Sullivan, a white woman in her mid-thirties, drove him. JPD detective Samuel Moss spotted Sullivan's minivan leave a motel parking lot at approximately 1:15 a.m. in an allegedly "high crime, high drug area." He ran her license plates, cross-referenced the registered owner with the FBI's National Crime Information Center database, and discovered that Sullivan had a pair of outstanding warrants. Moss signaled for backup. JPD officers Chris Ueding and Joshua Schiller soon arrived. Seconds after Moss stopped Sullivan's van and asked Sullivan to get out of the vehicle, she sped off.

JPD officers followed Sullivan through residential areas to New Albany, Indiana and then onto an interstate highway. During the chase, Sullivan drove across a median, entered a highway in the wrong direction, and later raced along at speeds exceeding ninety miles per hour. At one

point, Sullivan tried to "ram" the cruiser of JPD Officer Chris Grimm who had pulled alongside her on a major highway. When Sullivan crossed into Kentucky, LMPD officers joined in pursuit.

During the chase, Brackens made two frantic 911 calls, at least one of which was routed to the New Albany Police Department. On both calls, Brackens managed to convey that Sullivan had fled the police, and that he was trapped in her minivan and feared for his life. Despite his agitated state, Brackens clearly communicated that he was being held against his will and could not escape.

Unfortunately, the officers responding to the emergency were provided a different picture. As Sullivan led JPD cruisers along interstate highways in Louisville, LMPD dispatchers advised their officers that both Sullivan *and* Brackens had felony warrants, Brackens for second-degree escape with prior handgun charges. They were initially described as acting in concert. Minutes later, dispatch backpedaled and informed officers that "the female's not involved but she is in the vehicle . . . yelling that she's scared to death." Five times during the ten-minute communication, LMPD officers were told that the vehicle's occupants were "suicidal and homicidal." When Sullivan finally pulled over, dispatch twice warned "[a]ll units [to] use extreme caution."

JPD officers also received distorted information. The JPD dispatcher advised that the van's occupants were "saying stuff about how *they're* gonna die." Some accurate information was provided: Sullivan was driving and had outstanding warrants. Just before Sullivan pulled over, dispatch warned JPD officers to use "caution" and told them that the van's occupants were "trying to negotiate" with LMPD over the phone. At no point did either dispatch accurately communicate to its officers the details of Brackens's 911 calls.

The chase ended after twenty minutes when Sullivan stopped on a highway exit ramp in Louisville and her van was surrounded by JPD and LMPD cruisers. Two cruiser dashboard cameras captured the ensuing scene. JPD officers approached the driver's side of the van with weapons drawn and ordered Sullivan out. She quickly complied, exiting the driver-side door with her arms raised and dropping to the ground. Schiller and Moss placed her in wrist restraints. As Sullivan was secured, LMPD officers approached the passenger side of the van. Grimm pointed his firearm at Brackens through the driver-side window and Schiller moved from the rear of the van to the passenger side.

LMPD officers ordered Brackens out of the van. When he did not immediately comply, Schiller opened the passenger-side door, unbuckled Brackens, and dragged him to the ground with LMPD Officer Brian Gillock's assistance. They rolled Brackens onto his stomach and held him to the pavement with the help of LMPD Officers James Steffan and Christopher Meredith. At least one officer restrained Brackens by applying force to his head with a knee. Once Brackens was handcuffed, the officers stood him up to search for a weapon, but he was unable to remain standing. Brackens told the officers that he was disabled and they briefly propped him against the van to conduct the pat down. Brackens was then seated on the ground and remained handcuffed.

EMTs were called to the scene as a precaution and transported Brackens to the hospital. He sustained several injuries during the incident. Radiographs of Brackens showed fractures to his left femur and left humerus as well as "'severe' and 'diffuse' osteopenia and demineralization of his bones." Brackens died over a year later, apparently of causes unrelated to this event. His estate was substituted as plaintiff in this suit.

Brackens brought a lawsuit against the Louisville/Jefferson County Metro Government and individual JPD and LMPD officers, seeking damages in connection with the incident.[1] He claimed that the defendants: (1) used excessive force against him in violation of the Fourth Amendment; (2) conspired to violate his constitutional rights and to conceal evidence; and (3) violated Kentucky law on tort and evidence tampering. After discovery, the defendants moved for summary judgment on qualified-immunity grounds. The district court granted their motions. It found that the evidence showed that most of the officers were not in physical contact with Brackens. Although JPD Officer Schiller and LMPD Officers Gillock, Steffen, and Meredith did come into contact with Brackens, the court reasoned that they were protected by qualified immunity. It found no evidence to support the alleged conspiracy and state-law claims. The Brackens Estate appeals the grant of summary judgment to the LMPD officers in their individual capacity.

II

When there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Fed. R. Civ. P. 56(a). We review a district court's grant of summary judgment de novo, construing all reasonable inferences in favor of the nonmoving party, *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014), "to the extent supportable by the record," *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis omitted). To the extent that record is supported by video evidence, we view the facts in the light depicted by that evidence. *Id.* at 381.

---

[1] The Louisville/Jefferson County Metro Government and JPD officers have been dismissed as parties. The LMPD officers have been dismissed in their official capacities only. The Brackens Estate did not bring suit against the police dispatchers.

A

The Brackens Estate asserts a Fourth Amendment claim under 42 U.S.C. § 1983. To succeed on a § 1983 claim, a plaintiff must prove that a person acting under color of law deprived him of a right protected by the Constitution or laws of the United States. *Robertson*, 753 F.3d at 614. It is undisputed that the LMPD officers seized Brackens under color of law. At issue is whether they deprived him of a constitutional or federally protected right when doing so.

Qualified immunity protects government officials from suit under § 1983 if (1) their conduct does not violate a clearly established right (2) of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The district court concluded that the Brackens Estate did not show that the LMPD officers violated a clearly established constitutional right when they forcibly removed Brackens from the van and pinned him to the ground.

A claim that law enforcement used excessive force during a seizure is analyzed under the Fourth Amendment "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them . . . ." *Id.* at 397. "[A] reasonable officer on the scene" is "often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. "Relevant considerations include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight.'" *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (quoting *Graham*, 490 U.S. at 396).

The Sixth Circuit has had several occasions to consider whether forcibly removing the occupant of a vehicle following a high-speed chase violates the Fourth Amendment. In *Dunn v. Matatall*, for example, a motorist sped through a residential area at fifty miles per hour after an officer tried to initiate a stop. 549 F.3d 348, 350–51 (6th Cir. 2008). After two minutes, the motorist pulled over and complied with an order to place his keys outside the car, but a struggle ensued after he did not immediately comply with a command to get out of the car. (The delay may have been caused by the motorist's becoming stuck in his seatbelt rather than any intentional disobedience.) Two officers pulled him out of the car and forced him to the ground. He suffered a femoral fracture during the arrest. We held that the use of force was objectively reasonable "given the heightened suspicion and danger brought about by the car chase and the fact that an officer could not know what other dangers may have been in the car." *Id.* at 355.

In other circumstances, we have similarly found that in light of the potential safety threat to officers in such cases, the force required to remove from a vehicle a motorist who does not comply with police commands following a chase is not excessive under the Fourth Amendment. *See Blosser v. Gilbert*, 422 F. App'x 453, 458 (6th Cir. 2011); *Williams v. Ingham*, 373 F. App'x 542, 547–48 (6th Cir. 2010).

Although the facts and circumstances that inform an excessive-force claim will inevitably vary, our precedents are instructive. Taking the evidence as depicted in the dashcam videos and, otherwise, in the light most favorable to the Brackens Estate, the facts do not show that the LMPD officers used excessive force. The car chase here was far more dangerous than that in *Dunn*. For twenty minutes, Sullivan led police through two states at excessive speeds, drove in

the wrong direction on U.S. Route 31 at one point, and tried to ram a police cruiser. Not only does a car chase reasonably bring about "heightened suspicion and danger," *Dunn*, 549 F.3d at 355, but the LMPD officers had additional information that reasonably created an even greater safety concern.

According to dispatch, the male in the vehicle had a felony warrant for handgun possession, the female was "not involved," the vehicle's occupants were "suicidal or homicidal," and responding officers should "use extreme caution." Although much of that information was wildly and unforgivably inaccurate, no evidence suggests that *the officers*, in the midst of a "tense, uncertain, and rapidly evolving" car chase, had any reason to question it at the time. *Graham*, 490 U.S. at 397; *cf. White v. Pauly*, 137 S. Ct. 548, 552 (2017) ("No settled Fourth Amendment principle requires [an] officer to second-guess the earlier steps already taken by his or her fellow officers in instances like the one . . . confronted here."). Nor does any law impute the dispatch's errors to the officers individually.

It was reasonable for the LMPD officers to consider Brackens a safety threat. He was sitting in the front seat of a vehicle that had only just stopped after a twenty-minute chase. Unlike Sullivan, who immediately exited the vehicle and dropped to the ground when ordered to do so, Brackens did not respond. When Schiller opened the passenger door, Brackens's seatbelt was fastened. Given the information at the LMPD officers' disposal, the few seconds that elapsed between the order and Brackens's removal gave them little opportunity to appreciate fully that Brackens was disabled and unarmed, let alone that he had no felony warrants and was caught up in the chase involuntarily.

The force used must be objectively reasonable under the circumstances, and Brackens suffered serious injuries during the incident. Yet "'[n]ot every push or shove . . . ' violates the

Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Here, the officers used only reasonable force in neutralizing the perceived threat of a potentially dangerous passenger by removing him from the vehicle, pinning him to the ground until he was handcuffed, and conducting a pat down. There is no indication that the force applied would have seriously harmed a person without Brackens's conditions, of which the officers had no reason to know.

Since the LMPD officers who made physical contact with Brackens did not use unconstitutional force in restraining him, adjudication of the Brackens Estate's argument that it need not "identify his assailants with absolute certainty" is unnecessary. Appellant Br. at 25. Similarly, no LMPD officer can be held liable for failure to supervise or intervene because the underlying conduct was not unconstitutional. *Cf. Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

B

Summary judgment was also warranted for the conspiracy claim. The Brackens Estate points to its difficulty in obtaining certain records and to several officers' slightly divergent accounts of the information that dispatch relayed to them. Appellant Br. at 32. Standing alone, those facts do not show that LMPD officers conspired to deprive Brackens of "the equal protection of the laws," let alone that they were "motivated by racial, or other class based animus" in carrying out such a conspiracy. *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996); *see also* 42 U.S.C. § 1985(3).

C

The Brackens Estate also asserted several state-law claims. "[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law

claims." *Rouster v. County of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014) (citation omitted). But a federal court may choose to exercise jurisdiction if "the interests of judicial economy and the avoidance of multiplicity of litigation" outweigh the serious concern of "needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Here, it was not an abuse of discretion to rule on the pendent state-law claims, as the district court did not have to blaze new trails in state law and could resolve the claims with the facts and findings before it. Qualified immunity for purposes of § 1983 "is essentially identical to the qualified official immunity inquiry under [Kentucky] law." *Jefferson Cty. Fiscal Court v. Peerce*, 132 S.W.3d 824, 837 (Ky. 2004). When sued in their individual capacity, public officers are protected by qualified immunity "for negligent performance of: '(1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority.'" *T.S. v. Doe*, 742 F.3d 632, 641 (6th Cir. 2014) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)).

The district court's dismissal of the Brackens Estate's state-law tort claims was appropriate. The LMPD officers did not act in bad faith. As discussed, their actions were not "objective[ly] unreasonable[]," and the facts do not support an argument that they "willfully or maliciously intended to harm" Brackens. *Yanero*, 65 S.W.3d at 523. Rather, they behaved with the "permissible intention[]" of abating what they reasonably perceived as an immediate safety threat. *Bryant v. Pulaski Cty. Det. Ctr.*, 330 S.W.3d 461, 466 (Ky. 2011) (quoting *Yanero*, 65 S.W.3d at 523).

The Brackens Estate also claims that LMPD officers tampered with physical evidence. *See* Ky. Rev. Stat. § 524.100. However, the facts do not support the argument that any officer

"alter[ed] physical evidence . . . with intent to impair its . . . availability in the official proceeding." *Id.* at § 524.100(1)(a). Absent any such proof, the claim cannot be supported and accordingly the district court's grant of summary judgment on it was not in error.

### III

The facts of this case play out like a tragic performance of the party game of telephone: Brackens clearly indicated that he was being held against his will in the speeding car while Sullivan was refusing to cooperate with police, but his message was contorted and reported to responding officers as the exact opposite. Yet because the officers operated with the shockingly false information provided to them (information that they had no reason to doubt), their actions in removing Brackens—a man they were told was "suicidal and homicidal" and apparently willing and able to force an uninvolved party to drive recklessly to escape police—were reasonable. We therefore **AFFIRM** the district court's grant of summary judgment.